Mayo v. Newhoff.

Benjamin J. Mayo

v.

Annie Newhoff.

1. When one person erects a building on the land of another, under such ·circumstances as to show that it is the mutual intention of the parties that the person making the erection shall have the right to remove the building, the title to the building will not pass to the landowner, but will remain in the builder, and the building will be a chattel.

2 The law of easements and servitudes relates exclusively to land, and ·cannot be applied to a chattel.

3. But the owner of a building disassociated in title from the land whereon it stands, may, when he sells part of it, reserve rights in the part sold, for the ·benefit of the part retained, which the law will maintain and protect.

4. And such rights may, by the contract of sale, be attached to the building ·in such manner that they will pass with the building to its successive owners.

5. When a building is so constructed that one part of it is made tributary to the other, on a sale of that part of it which is tributary to the other, the natural presumption will be, in the absence of an express agreement to the ·contrary, that the purchaser takes the part he buys subject to such use by the other part as the mechanical arrangement of the building imposes.

6. If an equity is attached to property by its owner, no one purchasing with notice of that equity can stand in a different situation from the owner.

On final hearing on bill without answer.

*Mr. Frederic W. Stevens,* for the complainant.

*Mr. Elias F. Morrow,* for the defendant.

Van Fleet, V. C.

This case is before the court on final hearing on bill without an answer. The facts, bearing on the question in dispute, have been stated by the complainant in his bill with such accuracy and fairness as to render an answer, in the judgment of the defendant, unnecessary, and she has, in consequence, proceeded to final hearing on the bill alone.

The facts necessary to be considered, in deciding the question at issue between the parties, need to be stated somewhat in detail. They are the following: On the 1st day of November, 1854, the Third Presbyterian Church of Newark leased to Stephen Ford and Thomas Maplesden a lot on the west side of Broad street, in the city of Newark, forty-one and a half feet front and rear by one hundred and sixty-six feet deep, for a term of thirteen years and six months, extending to May 1st, 1868. When the lease was made the lessees were the owners of a frame building, about eighty feet deep and three stories in height, standing on the demised premises. The lower part of the building was then used as a store and the upper part as a dwelling. The only means of access to the upper part was by a stair-way in a hall on the northerly side of the building. A door opened from Broad street into the hall, and at the head of the stair-way there was a passage-way, running across the building, which afforded the only means of approach to the rooms facing the south in the second and third stories. The lease gave the lessees a right to renew for an additional term of twenty years, at a rent to be agreed upon or fixed by arbitrators, and also provided, that in case the lessees did not choose to renew, they should have the right to remove the building on the expiration of their term, unless the lessor should elect to take it at a valuation to be fixed by agreement or arbitration. Maplesden transferred all his right in the demised premises and the building to Ford, his co-lessee, in April, 1855. And Ford, on the 28th of October, 1867, sold and transferred to Charles Garrabrant the northerly part of the demised premises, the part sold being eighteen feet in width front and rear, measured from the northerly exterior line, and one hundred feet in depth. This sale included that part of the building standing on that part of the demised premises which he sold. The deed made by Ford to Garrabrant was executed by both under their hands and seals, and declares, that that part of the demised premises conveyed by it is conveyed subject to the following reservations and conditions :

"That the hall extending back twenty-eight feet, and the stair-way leading into the dwelling and upper part of the premises hereby conveyed and the part now owned by the said Stephen Ford, lying southerly of said last-described premises, shall be kept open and unobstructed for the use of said parties and their families, tenants and servants; and that said Ford, his family, tenants, servants and legal representatives shall have the right to use the stair-way, passage and cross-hall to and from any part of the premises owned by him, adjoining the premises hereby conveyed; and with the further reservation that the partitions in the third story of the building on the premises hereby conveyed shall remain as they are at this time, unless said building should be destroyed."

Just six months after the sale by Ford to Garrabrant, namely, on the 28th day of April, 1868, Ford and Garrabrant procured a new lease to be made to them jointly for a term of twenty years from May 1st, 1868. The new lease gave them substantially the same right to renew for an additional term of twenty years and to remove the building that the first lease did. Though the new lease was made to Ford and Garrabrant jointly, each subsequently occupied in severalty that part of the demised premises to which he was entitled. Ford, in September, 1869, consented, in writing, that Garrabrant might reduce the width of the hall-way from six to three feet, but the writing declared that it was expressly stipulated, that all the other conditions and reservations contained in the assignment made by Ford to Garrabrant, in October, 1867, should remain in force. Ford, on the 3d day of January, 1870, sold and assigned that part of the building which he owned, together with his right of passage through the other part, and also that part of the demised premises which he occupied, to the complainant. He also transferred to the complainant his right to a renewal of the lease for an additional term of twenty years. The lessor, in April, 1888, granted a new lease to the complainant for a term of twenty years from May 1st, 1888, of that part of the demised premises which the complainant then occupied. Garrabrant's right in the demised premises and to the building was sold, in December, 1886, under a judgment recovered against him at law, and purchased by his wife. He and his wife, in February, 1888, by writing, relinquished their right to a renewal of the lease and

also their right to the building in favor of the defendant. And the lessor, on the 15th of March, 1888, made a lease to the defendant, for a term of twenty years from May 1st, 1888, of that part of the demised premises which Garrabrant had previously occupied. This lease contains a recital of the provisions of the lease made by the lessor to Ford and Garrabrant, dated April 28th, 1868, and gives the date and place of record of a deed made by Ford to Garrabrant, in which the right now in dispute is reserved. The complainant himself occupies the lower part of his building as a store. The upper part he rents as a dwelling. The two parts have been thus used and occupied continuously since 1870. The complainant's tenants, for all that time, have used the hall and stair-way to go to and from the rooms in the upper part of his part of the building. There is no other means of access to those rooms, and never has been. The right of the occupant of those rooms to use this means of access was never denied or questioned until November, 1889. The defendant then denied it and placed a bar across the hall. Thereupon the complainant, together with his tenant, filed the bill in this case. An injunction is asked restraining the defendant from obstructing the passage through the hall to the rooms above. Though not alleged in the bill, it is admitted that Stephen Ford, the person who created the right which the complainant is seeking to maintain, died in 1885.

From the foregoing statement, it appears, that the defendant derived her title to the building from an entirely different source from that from which she acquired her right to the demised premises. Whatever right she has to the building, she acquired from Mrs. Garrabrant. Her lessor had no right to the building; the lease, therefore, made by her lessor to her gave her none. And now we come to what I regard as the test question of the case, and that question is, did the right reserved by Ford, in his sale to Garrabrant, have the effect to create in favor of that part of the building which he retained, and impose upon that part of the building which he sold, a license or right in the nature of an easement which the parties meant should attach itself to the building and pass with the building to all subsequent owners?

If such was the mutual intention of the parties, the reservation constitutes a contract which it is the duty of the court to uphold and enforce, unless it appears that it is opposed to sound public policy, or that it violates some positive rule of law. No claim was made on the argument that the reservation is void on either of these grounds. In my judgment, it is unassailable on either. The defendant's contention, however, is, that the building is a chattel, and hence not subject to the law of easements and servitudes. In other words, that one part of a chattel cannot, by contract or otherwise, be made servient to another part, so as to make one part dominant and the other servient. The building is unquestionably a chattel. The law is settled, that where one person erects a building on the land of another by permission, under such circumstances as to show that it is the mutual intention of the parties that the person making the erection shall have the right to remove the building, the title to the building will not pass to the landowner, but will remain in the builder, and the building itself, notwithstanding it is incorporated into the land in such manner as to make it part of the land, if it had been erected by the owner of the land, will, according to the legal classification of property, be considered a chattel. *Pope* v. *Skinkle, 16 Vr. 39.* It is also true that the law of easements relates exclusively to land, and cannot be applied to chattels. An easement is defined as a right which one proprietor has to some profit, benefit or lawful use out of or over the estate of another proprietor. *Washb. Easem. 4* ¶ *3.* Generally speaking, an easement is a right which exists in favor of one parcel of land in or over another parcel. The burthen which its creation imposes is imposed on the land, and not on the person of its owner; and the right which its creation raises is raised in favor of the dominant tenement, rather than in favor of its owner.

But conceding, as I think we must, that both of the defendant's legal propositions are sound, still I do not think it follows that the complainant must be refused the relief he asks. Although the building must, as a matter of law, be classified as a chattel, still the court, in dealing with it as a thing of property, cannot fail to see, in view of the purposes for which it was erected, and

the uses to which it has been applied continuously for over thirty years, that its principal, if not its only, value consists in its enjoyment as a building firmly incorporated into the land on which it stands. Precisely the same beneficial use and enjoyment may be had of a building thus disassociated from the title to the land whereon it stands, as can be had of a like building which is associated in title with the land on which it is erected. One of the primary objects of the law is the protection of private property, and one of the highest duties incumbent upon courts, exercising a purely civil jurisdiction, is to so apply legal principles as to render property rights safe and secure. There can be no doubt that the dominion which the law gives every property owner over his property, invests him with power, when he sells part, whether it be realty or personalty of the kind under consideration, to reserve such rights in the part sold, for the benefit of the part retained, as he may think proper. Every property owner of the kind in question may do with it as he pleases, so long as he does not attempt to apply it to an unlawful purpose. He may sell it in whole or in part; subject to restrictions or free from restrictions; absolutely or conditionally. I do not suppose it can be doubted, by any one competent to form an intelligent opinion on the subject, that if Ford, on transferring part of the building to Garrabrant, had taken from Garrabrant a lease or other writing, granting to him and his successors in ownership of that part of the building which he retained, a right of passage through the part sold, expressed in the words of the reservation, and the right had been subsequently violated in the manner alleged in the bill, that the complainant would have been entitled to the protection he asks. And yet the distinction between that case and the one actually before the court consists in a mere difference in form and not in substance.

The language of the reservation, as well as the nature of the right which it created, shows that the parties meant that the right should be considered attached to the building and pass with the building to its successive owners. The building, it will be remembered, was originally constructed so as to make one part of it tributary to the other, and this was its condition and

Mayo *v.* Newhoff.

the way in which it was used when Ford sold part of it to Garrabrant. Now, with the building thus arranged, and in actual use according to such arrangement, on a sale of that part of it which was tributary to the other, the natural presumption would be, in the absence of an express agreement to the contrary, that the purchaser meant to take the part he bought subject to the right which the mechanical arrangement of the building imposed upon it in favor of the other part. But the right here stands upon something stronger than presumption. The words of the reservation give the right in question to Ford, his family, tenants, servants and legal representatives. The fact that the right was without value except to the owner of that part of the building which Ford retained, and that it was obviously reserved to preserve the vendible quality of that part of the building, makes it manifest that the phrase "legal representatives" was not used in its strictly technical sense, but in a sense broad enough to include Ford's successors in ownership. And that is the construction which Garrabrant has impressed upon it by a long course of conduct. The complainant, it will be remembered, purchased, in January, 1870, that part of the building retained by Ford, and at once entered into possession of it. From that time up until November, 1889, a period over nineteen years, the complainant and his tenants exercised the right in dispute freely and without question. Garrabrant, the person who negotiated the contract in which the right was reserved, and who consequently knew better than any other person what he meant to yield, submitted, without complaint, for over sixteen years to the constant exercise of this right by the complainant. This, it is very certain, he would not have done if he had notb elieved that the complainant was simply doing what he had a good right to do.

Garrabrant's conduct, considered in connection with the language of the reservation, would seem to leave no doubt that he understood that he took title, to that part of the building which he purchased, fettered with the right which the complainant claims, and that such right should continue in force so long as his part of the building should endure. This being the basis

Mayo *v.* Newhoff.

upon which he made his purchase, it follows, necessarily, that it must be assumed that he only paid such price for the subject of his purchase as he believed it to be fairly worth, subject to the right in question. In view of this fact, it is plain, to relieve the defendant's part of the building from the burden in question will result in giving her something for which she has paid nothing, and in taking away from the complainant a right for which he has given a valuable consideration. This, of course, ought not to be done, except under the pressure of a very stern necessity. My judgment is, that the contract made by Ford with Garrabrant attached the right in question to the building, and that Ford and Garrabrant meant that the right should pass with the building to its successive owners.

There is a single other question to be decided: Did the defendant take title with notice of the complainant's right? The case is one in which the rule laid down by Lord Cottenham in *Tulk* v. *Moxhay*, *2 Phil. 772*, and followed in many subsequent cases, should, I think, be applied. That rule is, that if an equity is attached to property by its owner, no one purchasing with notice of that equity can stand in a different situation from the owner. Although it must be admitted that this rule was originally applied to real estate, and has not as yet been given a wider application, yet no reason of justice or policy was mentioned on the argument, and none has suggested itself to my mind, which renders it inapplicable to personalty of the kind under consideration; on the contrary, it would seem to be quite clear, that unless it is applied to property of the latter kind, valuable rights, for which a full consideration has been paid, must be lost. It requires no argument to show that the defendant took title with notice of the complainant's right. The mechanical arrangement of the building was sufficient of itself to render her chargeable with full information on that subject. But it should be said, in addition, that she stands, as to the building, in the right of Garrabrant's title derived from Ford. Unless she was intentionally careless, she inspected, prior to her purchase, the instruments by which Ford made title to Garrabrant, and which created

the right in question, and thus obtained full and complete information respecting it.

The complainant, in my judgment, is entitled to the protection he asks.